**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATHAN BRUMLEY, et al., | Civil Action No.: 08-1798 (JLL) |
| Plaintiff, | |
| v. | **OPINION** |
| CAMIN CARGO CONTROL, INC., et al., | |
| Defendants. | |
| SOLOMON GUEVERA, et al., | Civil Action No.: 10-2461 (JLL) |
| Plaintiff, | |
| v. | |
| CAMIN CARGO CONTROL, INC., et al., | |
| Defendants. | |
| IVO JAMES, et al., | Civil Action No.: 09-6128 (JLL) |
| Plaintiff, | |
| v. | |
| CAMIN CARGO CONTROL, INC., et al., | |
| Defendants. | |

This matter comes before this Court by way of Plaintiffs Nathan Brumley, Solomon

Guevera and Ivo James ("Plaintiffs")'s unopposed motions to: (1) approve the Fair Labor

Standards Act ("FLSA") collective action settlement; (2) consolidate the actions for settlement

purposes [Docket Entry Nos. 227, 228 and 229]; and (3) approve attorneys' fees and reimburse

expenses [Docket Entry Nos. 230, 231, 232, and 233]. The Court has considered the

submissions of the Plaintiffs in support of the instant motions, and decides the motions on the

papers pursuant to Fed. R. Civ. P. 78.  For the reasons stated herein, the Court: (1) grants in part

and denies in part Plaintiffs' Motion to Approve the FLSA Collective Action Settlement; (2)

grants the Plaintiffs' Motion to Consolidate the Actions for Settlement Purposes; and (3) grants

Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Expenses.

## I.  BACKGROUND

The above-cited actions were brought as separate FLSA collective actions in which a total

of 112 Plaintiffs, all current and former petroleum inspectors, alleged overtime violations against

Defendants Camin Cargo Control and the above-named officers.  (Pls. Br. Supp. Mot. to

Approve Collective Action Settlement ("Pls. Settlement Approval Mot."), at 1).  Of those

Plaintiffs, five also alleged retaliation claims against Defendants pursuant to 29 U.S.C. § 215(a)

of the FLSA.  (Id.).  The above actions were extensively litigated for over four years, but the

Parties eventually negotiated a Settlement Agreement submitted with the instant Motions for the

Court's review.  (Id., at 7).

On January 10, 2012, Defendants filed an unopposed motion to file the Parties'

Settlement Agreement under seal pursuant to Local Civil Rule 5.3(c).  [Docket Entry No. 223].

On January 30, 2012, this Court denied Defendants' motion based, inter alia, on the strong

presumption in favor of keeping settlement agreements in FLSA wage-settlement cases unsealed

and available for public view as well as the public-private character of employee rights under the

FLSA. [Docket Entry Nos. 225, 226].  On February 1, 2012, the Plaintiffs filed the instant

unopposed Motions to Approve the Settlement, to Consolidate the Actions for Settlement

Purposes, and to Approve the Attorneys' Fees and Reimbursement of Expenses.

## II.  LEGAL STANDARDS

Pursuant to the FLSA, a collective action "may be maintained . . . by any one or more

employees for and in behalf of themselves and other employees similarly situated." 29 U.S.C. §

216(b) (1982).  Employees have two avenues for compromising an FLSA claim: (1) a

compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); and (2) a

district court-approved compromise pursuant to 29 U.S.C. § 216(b).  If employees choose to

bring an FLSA collective action in federal court, section 216(b) requires collective action class

members to "opt-in" by affirmatively indicating their consent to be part of the Class, and "[n]o

employee shall be a party plaintiff to any such action unless he gives consent in writing to

become such a party and such consent is filed in the court in which such action is brought." Id.

An employee's failure to opt in does not prevent him or her from bringing a separate suit at a

later date.  See Pentland v. Dravo Corp., 152 F.2d 851, 853 (3d Cir. 1945); Lusardi v. Lechner,

855 F.2d 1062, 1070 (3d Cir. 1988).

When employees bring a private action under the FLSA, and present to the district court a

proposed settlement pursuant to that Act's § 216(b), the district court may enter a stipulated

judgment if it determines that the compromise reached "is a fair and reasonable resolution of a

bona fide dispute over FLSA provisions." See Lynn's Food Stores, Inc. v. United States, 679

F.2d 1350, 1354 (11th Cir. 1982); Bredbenner v. Liberty Travel, Inc., 2010 U.S. Dist. LEXIS

38663, * 50-51 (D.N.J. Apr. 8, 2011); see also H.R. Rep. No. 101-644, at 18-19 (1990).  While

the Third Circuit has not directly addressed the factors to be considered in deciding motions for

approval of FLSA settlements, district courts have typically looked to the considerations set forth

in Lynn's Food, cited infra. See, e.g., Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1235-1237

(M.D. Fla. 2010); Poulin v. General Dynamic Shared Resources, 2010 U.S. Dist. LEXIS 47511,

* 1-2 (W.D. Va. May 5, 2010); Glass v. Krishna Krupa, LLC, 2010 U.S. Dist. LEXIS 110139, *

2-3 (S.D. Ala. Oct. 15, 2010); Scott v. Memory Co., 2010 U.S. Dist. LEXIS 119832, * 2-3 (M.D.

Ala. Nov. 10, 2010); Hogan v. Allstate Beverage Co., 2011 U.S. Dist. LEXIS 90767, *15-16

(M.D. Ala. Aug. 15, 2011); Kianpour v. Restaurant Zone, Inc., 2011 U.S. Dist. LEXIS 127865, *

5-6 (D. Md. Nov. 4, 2011); Prescott v. Prudential Ins. Co., 2011 U.S. Dist. LEXIS 147724, * 4-5

(D. Me. Nov. 28, 2011); Webb v. CVS Caremark Corp., 2011 U.S. Dist. LEXIS 147989 (M.D.

Ga., Dec. 23, 2011).  In determining whether the compromise resolves a bona fide dispute, the

Court must be reassured that the settlement "reflect[s] a reasonable compromise of disputed

issues [rather] than a mere waiver of statutory rights brought about by an employer's

overreaching," and the bona fide dispute must be determined to be one over "factual issues" not

"legal issues such as the statute's coverage or applicability."  Lignore v. Hosp. of the Univ. of

Pa., 2007 U.S. Dist. LEXIS 32169, * 13-14 (E.D. Pa. May 2, 2007); Lynn's Food, 679 F.2d at

1354.

"The congressional purpose of the FLSA and the public's interest in the transparency of

the judicial process decisively inform both the procedure and the standard applicable to a district

court's review of an FLSA settlement." Dees, 706 F. Supp. 2d at 1231.  Thus, district courts

have scrutinized FLSA settlements for the bona fides of the dispute by investigating the existence

of "side deals" or other conditions not present on the face of the employer's offer, including

constraints on employees beyond their full compensation under the FLSA. Id., at 1239; see also

MacKenzie v. Kindred Hospitals East, LLC, 776 F. Supp. 2d 1211, 1213 (M.D. Fla. 2003).  This
is because, as district courts have noted, "Lynn's Food requires approval of each FLSA
compromise, regardless of the issue that underlies the compromise.  In practice, leaving an FLSA
settlement to wholly private resolution conduces inevitably to mischief.  An employer who pays
less than the minimum wage or who pays no overtime has no incremental incentive to comply
voluntarily with the FLSA, if, after an employee complains, the employer privately compromises
the claim for a discount–an amount less than the full amount owed under the FLSA (plus, with
savvy negotiation, a confidentiality agreement to preclude the spread to other employees of
information about the FLSA)."  Dees, 706 F. Supp. 2d at 1236-37; see also Hogan, 2011 U.S.
Dist. LEXIS at *21-22 ("keeping a settlement confidential . . . . can prove costly to the employee
himself, for they prevent the employee from alerting other workers to potential FLSA violations
on pain of personal liability.").  One example of such a "side deal" was illustrated as follows:
"the employer in an FLSA case might offer full monetary compensation to the employee for the
FLSA claim but might require the employee to refrain from informing fellow employees about
the result the employee obtained. . . . In [such] instance, the employee outwardly receives full
monetary compensation for his unpaid wages, but effectively the additional term (the 'side deal')
confers a partially offsetting benefit on the employer.  To the extent that the employee receives a
full wage but relinquishes something else of value, the agreement (even if exhibited to the court
as a stipulation for 'full compensation' or an offer of judgment) involves a 'compromise,' and
Lynn's Food requires judicial approval of the compromise."  Dees, 706 F. Supp. 2d at 1240; see
also Silva v. Miller, 307 F. App'x 349, 351 (11th Cir. 2009).

      Along with requesting the approval of the settlement, Plaintiffs also request that the Court

consolidate the above-captioned matters for purposes of settlement.  Pursuant to Fed. R. Civ. P.

42, actions before a court may be consolidated if they "involve a common question of law or

fact." Fed. R. Civ. P. 42(b).  The purpose of consolidation is "to streamline and economize

pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in

cases involving similar legal and factual issues." In re TMI Litig., 193 F.3d 613, 724 (3d Cir.

1999)(citation omitted).

       Finally, Plaintiffs request that the Court award attorneys' fees in the amount of one-third

(33.33%) of the settlement fund plus costs.  Under Third Circuit law, a Court may evaluate the

award of attorneys' fees through two established methods: (1) the lodestar approach, and (2) the

percentage of the recovery approach. In re Diet Drugs Product Liability Litig., 582 F.3d 524, 540

(3d Cir. 2009); In re AT&T Corp., 455 F.3d 160, 164 (3d Cir. 2006).  Under the common fund

doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or

preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of

his litigation, including attorneys' fees." In re Cendant Corp. Sec. Litig., 404 F. 3d 173, 187 (3d

Cir. 2005)(citation omitted).  When calculating attorneys' fees in such cases, the percentage-of-

recover method is generally favored. In re Diet Drugs, 582 F.3d at 540 (citing Krell v. Prudential

Ins. Co., 148 F.3d 283, 333 (3d Cir. 1998)).  In determining what constitutes a reasonable

percentage fee award in the Third Circuit, a district court must consider ten factors: (1) the size

of the fund created and the number of beneficiaries; (2) the presence or absence of substantial

objections by members of the class to the settlement terms and/or fees requested by counsel; (3)

the skill and efficiency of the attorneys involved; (4) the complexity and duration of the

litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs'

6

counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of

class counsel relative to the efforts of other groups, such as government agencies conducting

investigations; (9) the percentage fee that would have been negotiated had the case been subject

to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative

terms of settlement.  In re Diet Drugs, 582 F.3d at 541 (citing Gunter v. Ridgewood Energy

Corp., 223 F.3d 190, 195 (3d Cir. 2000) and Prudential, 148 F.3d at 342).


### III.  DISCUSSION

### A.  Motion for Approval of the FLSA Collective Action Settlement

Plaintiffs contend that: (1) the settlement is fair with minimal due process concerns due to

the "opt-in" nature of the settlement, which does not preclude employees who have not opted in

from bringing their own suits at a later date; (2) the Parties have bona fide disputes over legal and

factual issues compromised by the instant Agreement, including the appropriate statute of

limitations applicable to Plaintiffs' claims, Defendants' liability for liquidated damages, the

amount of hours Plaintiffs worked, the formula for calculating damages, whether retaliation

occurred and the correct measure of damages for all claims; (3) the settlement is fair due to the

adversarial nature of the case, the Parties' extensive engagement in settlement negotiations, the

Parties' representation by experienced counsel, the positive reaction of every Plaintiff who has

spoken with counsel, the substantial discovery and litigation that has occurred informing the

parties of the legal issues and evidence, and the amount of Plaintiffs' recovery; (4) the settlement

is consistent with the public policy favoring settlement; and (5) the service payments are

reasonable and appropriate.  (Pls. Settlement Approval Br., at 11-19).

7

The FLSA was enacted "to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce.  The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered the national health and efficiency and as a result the free movement of goods in interstate commerce."  Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945).  For this purpose, the Act imposes a minimum wage and an overtime wage for each of several categories of employee.  See 29 U.S.C. § 206 (establishing a minimum wage); 29 U.S.C. § 207 (providing that no employer shall require an employee to work "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.").   To enforce these worker protections, the FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of unpaid wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages . . . . The court in [an action to recover under the FLSA] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).

## 1.  Evaluating the FLSA Compromise: Reasonableness and Fairness

A compromise may be scrutinized for fairness in two steps: "First, the court should consider whether the compromise is fair and reasonable to the employee (factors 'internal' to the

compromise).  If the compromise is reasonable to the employee the court should inquire whether

the compromise otherwise impermissibly frustrates implementation of the FLSA (factors

'external' to the compromise).  The court should approve the compromise only if the

compromise is reasonable to the employee and furthers implementation of the FLSA in the

workplace." <u>Dees</u>, 706 F. Supp. 2d at 1241.

  a.  Internal and External Factors: Fairness and Reasonableness of the Compromise to the
  Employee in Light of Furthering the Implementation of the FLSA in the Workplace

  While factors for evaluating "fairness" of a settlement in an FLSA collective action have

not been definitively set out by the Third Circuit, district courts in this Circuit have utilized the

<u>Girsh</u> factors established for approving Rule 23 class action settlements, which are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) stage of the proceedings and the amount of
> discovery completed; (4) risks of establishing liability; (5) risks of establishing
> damages; (6) risks of maintaining the class action through the trial; (7) ability of
> the defendants to withstand a greater judgment; (8) the range of reasonableness of
> the settlement fund in light of the best possible recovery; and (9) the range of
> reasonableness of the settlement fund to a possible recovery in light of all the
> attendant risks of litigation.

<u>Girsh v. Jepson</u>, 521 F.2d 153, 157-57 (3d Cir. 1975)(citation omitted); <u>see</u> <u>Bredbenner v.</u>

<u>Liberty Travel, Inc.</u>, 2011 U.S. Dist. LEXIS 38663, * 31 (D.N.J. Apr. 8, 2011).

  Aside from Sections E and H for reasons detailed <u>supra</u>, the Court finds that the

Settlement Agreement is fair under the <u>Girsh</u> factors.  The settlement, which provides time and

one half of each employee's hourly rate, liquidated damages, minimum recovery values for each

Plaintiff, recovery for retaliation claims for five Plaintiffs, and service payments to

representatives is a "reasonable compromise of disputed issues [rather] than a mere waiver of

statutory rights brought about by an employer's overreaching."  <u>Lynn's Food Stores</u>, 679 F.2d at

1354.  As stated supra in the discussion of the reasonableness of the attorneys' fees requested by

Plaintiffs' counsel, the three-above cited actions involve 112 Plaintiffs and complex wage-and-

hour disputes over an extensive period of time, requiring substantial calculations, negotiations

regarding inclusion and exclusion from the statute's protections, and the resolution of retaliation

claims.  Given the four-year period in which this matter has been litigated and negotiated, and the

discovery and motion practice resulting from counsels' efforts, the Court finds that expected

factual and legal issues at trial would be complex, possibly resulting in appeal.  By reaching a

settlement at this time, the parties avoid the costs of a lengthy and complex trial which would be

both time-consuming and expensive.  See, e.g., Ehreheart v. Verizon Wireless, 609 F.3d 590, 595

(3d Cir. 2010).  In addition, as stated supra, Plaintiffs have not objected either to the settlement

terms or to the attorneys' fees award request.  (Pls. Mot. for Approval of Attorneys' Fees and

Reimbursement of Expenses ("Pls. Attorneys' Fees Mot."), at 4).  Further, the Court is satisfied

with the degree of case development accomplished by counsel prior to the submissions of these

Motions, particularly in light of the four years of extensive discovery to establish "an adequate

appreciation of the merits of the case before negotiating."  In re Gen. Motors Pick-Up Truck Fuel

Tank Prods. Liab. Litig., 55 F.3d 768, 813 (3d Cir. 1995).  The risks of establishing liability and

damages for Plaintiffs in the above matters is uncertain due to: (1) the considerable risks entailed

by trial on the merits; (2) the technical nature of calculating appropriate damages and the scope

of protections; (3) whether the statute of limitations would bar some of Plaintiffs' claims; and (3)

whether the quantum of damages Plaintiffs would collect would match the common fund

achieved in the memorialized terms of the Settlement Agreement.  See Weiss v. Mercedes-Bens

of N. Am., Inc. 899 F. Supp. 1297, 1301 (D.N.J. 1995); Pignataro v. Port Auth. of N.Y. and N.J.,

593 F.3d 265, 273 (3d Cir. 2010). Whether Plaintiffs could withstand a greater judgment is uncertain, particularly since the payouts would be largely based on figures from payroll records. However, as explained supra in Section C discussing the approval of Plaintiffs' counsel's attorneys' fees request, the Court finds the settlement fund reasonable in light of the best possible recovery and as compared to other common funds achieved in wage-and-hour cases.

However, as stated infra, one significant component of the analysis of the fairness of FLSA settlement agreements is whether the compromise resolves a bone fide dispute. Settlements "are intended principally to resolve controversy over any FLSA terms actually in dispute." Hogan, 2011 U.S. Dist LEXIS 90767, at * 14 (citing Lynn's Food, 679 F.2d at 1353)). Therefore, the Parties are required to provide the Court with enough information for the Court to examine the bona fides of the dispute, providing a description of "the nature of the dispute (for example, a disagreement over coverage, exemption, or computation of hours worked or rate of pay) resolved by the compromise." Dees, 706 F. Supp. 2d 1241. Since the terms of the Settlement Agreement deal specifically with the resolution of a bona fide dispute over FLSA provisions, and the Parties have submitted descriptions of the nature of the dispute resolved by said compromise–including a description of the employer's business, the type of work performed by the employees, the reasons the employer disputed the employee's right to overtime and the reasons justifying the employees' right to the disputed wages–the Court is assured as to the bona fides of the dispute. However, two components of the Settlement Agreement must be rejected pursuant to the purposes of the FLSA: the confidentiality and release provisions contained in Sections E and H of the Settlement Agreement. (Pls. Settlement Approval Mot., Declaration of Matthew Dunn ("Dunn Decl."), Ex. 2, "Settlement Agreement and Release of Claims," Sections

11

E and H).  The Court will assess in turn why each of these provisions must be rejected as unfair.

### i. Confidentiality Provision

The confidentiality provision contained in the Parties' Settlement Agreement provides, in pertinent part, "Plaintiffs shall not disclose either orally, visually or written, either directly or indirectly, in any manner the terms of the Agreement to any person or organization, including but not limited to members of the press and media, present and former officers, employees and agents of Camin Cargo Control, future prospective employers, customers of Camin Cargo Control, entities which have or do business with Camin Cargo Control and other members of the public. . . . Should Plaintiffs be asked by any third party . . . as to the outcome of the Complaints, Plaintiffs will respond only with 'the matter has been resolved and I cannot talk about it.'  Should any immediate family members or life partners of any the Plaintiffs be asked as to the outcome of the Complaints, such family members or life partners will respond only with 'the matter has been resolved and I cannot talk about it.'"  Id.  The provision further details the limited nature of the case descriptions permitted on Plaintiffs' law firm's website status reports.  Id.  Finally, the provision describes the steps required for Court filings regarding the Agreement, specifically with respect to filings made under seal, which this Court has already denied in its Opinion and Order dated January 30, 2012, as contravening the purposes of the FLSA and the strong presumption in favor of judicial records being available to the public. [Docket Entry Nos.225, 226].

Employers in FLSA collective actions may seek and have sought to maintain the confidentiality of settlement agreements due to worries that settling with one employee will encourage other employees to assert FLSA rights, particularly in cases such as this where opting

12

into the distributions resulting from the instant Agreement do not preclude employees who have

failed to opt in from bringing separate actions against the employer.  However, courts have found

that a confidentiality provision in an FLSA collective action settlement agreement

> furthers resolution of no bona fide dispute between the parties; rather, compelled silence
> unreasonably frustrates implementation of the 'public-private' rights granted by the FLSA
> and thwarts Congress's intent to ensure widespread compliance with the statute.  To
> further Congress's intent, the Department of Labor requires the employer of an employee
> covered by the FLSA to display conspicuously in the workplace a detailed notice of the
> employee's FLSA rights.  By including a confidentiality provision, the employer thwarts
> the informational objective of the notice requirement by silencing the employee who has
> vindicated a disputed FLSA right. . . . An employee's right to a minimum wage and
> overtime is unconditional, and the district court should countenance the creation of no
> condition, whether confidentiality or any other construct, that offends the purpose of the
> FLSA.  An employer is obligated unconditionally to pay a minimum wage and overtime
> to the complainant and his fellow employees; the district court should not become
> complicit in any scheme or mechanism designed to confine or frustrate every employee's
> knowledge and realization of FLSA rights.

Dees, 706 F. Supp. 2d at 1242-47 (citing Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 704-

08 (1945)).  In addition, the FLSA is explicit in prohibiting employers from retaliating against

employees for asserting their rights under the FLSA under Section 15(a)(3).  If an employee

under this Settlement Agreement discusses the FLSA with fellow employees or otherwise asserts

FLSA rights, the confidentiality provision in the instant Agreement would allow Defendants to

sue the employee for breach of contract, and Defendants "most proximate damages from the

employee's breach are the unpaid FLSA wages due other employees who learned of their FLSA

rights from the employee who breached the confidentiality agreement. A confidentiality

agreement, if enforced, (1) empowers an employer to retaliate against an employee for exercising

FLSA rights, (2) effects a judicial confiscation of the employee's right to be free from retaliation

for asserting FLSA rights, and (3) transfers to the wronged employee a duty to pay his fellow

employees for the FLSA wages unlawfully withheld by the employer.  This unseemly prospect

vividly displays the inherent impropriety of a confidentiality agreement in settlement of an FLSA dispute." Id.   Therefore, district courts have rejected as unreasonable settlement agreements that contain confidentiality provisions, finding them unenforceable and operating in contravention the FLSA.   See, e.g., Poulin, 2010 U.S. Dist. LEXIS 47511, at * 6 ("a confidentiality provision in an FLSA settlement agreement undermines the purposes of the Act, for the same reasons that compelled the Court to deny the parties' motion to seal their Settlement Agreement); Valdez v. T.A.S.O. Prop., Inc., 2010 U.S. Dist. LEXIS 47952, at *1 (M.D. Fla. Apr. 28, 2010)(citing Dees in its rejection of the parties' joint motion to approve a settlement containing a confidentiality agreement); Glass, 2010 U.S. Dist. LEXIS 1120139, at * 2 (citing Dees in rejecting the "parties settlement agreement . . . as unreasonable because it contains a confidentiality provision. . . . While the additional consideration paid to Glass may satisfy the above concerns of retaliation by Days Inn against Glass, this additional amount does not remedy this court's concern about the possible frustration of the notice requirement to other employees."); Hogan, 2011 U.S. Dist. LEXIS 90767, at * 18 (finding a proposed settlement's confidentiality provision unfair under the FLSA); Scott, 2010 U.S. Dist. LEXIS 119832, at * 6 (citing Dees in declining to approve the confidentiality provision contained in the parties' proposed settlement agreement); Webb, 2011 U.S. Dist. LEXIS 147989, at * 7 (finding the settlement agreements fair and reasonable with the exception of the confidentiality and release clauses, stating that "in light of the Court's ruling that it will not seal any settlement agreements, it is likely the confidentiality provisions are unenforceable," and citing Dees in further stating that a confidentiality provision in an FLSA agreement would contravene the legislative purpose of the FLSA and undermine the Department of Labor's notice requirement).   District courts have also found confidentiality provisions

14

unenforceable in light of the public filing of FLSA settlement agreements. See Head v. V&L

Services III, Inc., 2009 U.S. Dist. LEXIS 99784, at *3 (M.D. Fla. Oct. 27, 2009)(noting that "the

settlement agreements contain terms that this Court would not approve, such as the

confidentiality provisions, which are partially unenforceable in light of the public filing of the

agreements").

### ii. Release of Claims Provision

Section E of the Parties' Settlement Agreement provides, in pertinent part,

> The Plaintiffs, on behalf of themselves and their heirs, estates, executors, administrators,
> assigns, transferees and representatives release and forever discharge the Defendants and
> their predecessors, successors, parents, subsidiaries, affiliates, assigns, and all of their
> present and former directors, officers, employees, agents, shareholders, and
> representatives . . . from any and all claims, causes of actions, demands, debts,
> obligations, damages or liability of any nature, whatsoever, known or unknown, which
> concern or relate in any way to the payment of wages or bonuses or any other form of
> compensation under the FLSA and any and all claims for retaliation under the FLSA or
> state wage-and-hour statutes, whether those claims exist, or allegedly exist, at law or in
> equity under the common law, contract law, statutory law, the [FLSA], and state wage
> laws, as well as any and all derivative claims under the [ERISA].

(Dunn Decl., "Settlement Agreement and Release of Claims," Section E, at 9-10).  While

workers seeking to recover backpay may be willing to waive unknown claims in order to access

wrongfully withheld wages as soon as possible, "'a pervasive release in an FLSA settlement

[that] confers an uncompensated, unevaluated, and unfair benefit on the employer' should be

examined closely." Hogan, 2011 U.S. Dist. LEXIS 90767, *24 (citing Moreno v. Regions Bank,

729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010)).  The Court finds the release provision to be

pervasive to the extent that it incorporates any and all FLSA claims the Plaintiffs may allege

regarding violations that Defendants might commit subsequent to the final approval of a

settlement in the above-captioned actions by this Court.  The Supreme Court and lower courts

have consistently rejected broad waivers of FLSA rights, beginning with the Supreme Court's

holding in <u>Brooklyn Savings Bank v. O'Neil</u> that "[n]o one can doubt but that to allow waiver of

statutory wages by agreement would nullify the purposes of the Act." 324 U.S. at 705-08; <u>see</u>

<u>also</u> <u>D.A. Schulte v. Gangi</u>, 328 U.S. 108, 114 (1946)(broadening the holding in <u>Brooklyn</u>

<u>Savings Bank</u> in its determination that "the remedy of liquidated damages cannot be bargained

away by bona fide settlements of disputes over coverage"); <u>Lynn's Food</u>, 679 F.2d at 1352

("FLSA rights cannot be abridged by contract or otherwise waived"); <u>Dees</u>, 706 F. Supp. 2d at

1243 ("an employee may not prospectively waive his right to a minimum wage or to overtime

compensation. . . . The district court should reject a compromise that includes a prospective

waiver, approval of which would 'nullify the purposes of the [FLSA].'"). The FLSA was

enacted in part to address "inequalities in bargaining power between employers and employees."

<u>Lynn's Food</u>, 679 F.2d at 1352 (<u>citing</u> <u>Brooklyn Savings Bank</u>, 324 U.S. at 706). Given the

legislative intent, purpose and context of the FLSA, it would be unfair for the Court to enforce

this settlement's prospective waiver of Plaintiffs' FLSA rights.

Therefore, excluding the confidentiality and release provisions of the Settlement

Agreement, the Court finds that Settlement Agreement to be fair as a reasonable compromise to a

bona fide dispute under the FLSA to the extent that it finds: (1) the amount to be paid to each

Plaintiff for overtime and liquidated damages fair and reasonable; and (2) the terms governing

service payments and payments for Plaintiffs' retaliation claims fair and reasonable.

### B. Motion for Consolidation of Actions for Purposes of Settlement

The Court finds that the respective FLSA classes should be certified and consolidated

into one action for the purposes of settlement. Pursuant to Fed. R. Civ. P. 42, the Court may

consolidate the above-captioned matters if they "involve a common question of law or fact."

Fed. R. Civ. P. 42(b). The purpose of consolidation is "to streamline and economize pretrial

proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases

involving similar legal and factual issues." In re TMI Litig., 193 F.3d at 724. District courts in

this and other Circuits have consolidated FLSA actions involving common underlying facts or

law. See, e.g., Bredbenner v. Liberty Travel, Civ. No. 09-905, Docket Entry No. 82 (D.N.J. Mar.

5, 2010); Clark v. Ecolab, Inc., 2010 U.S. Dist. LEXIS 47036, * 1 (S.D.N.Y. May 11, 2010).

The above-cited actions involve common Defendants, common claims brought pursuant

to the FLSA, and a common class of employees as petroleum and gas inspectors who alleged that

FLSA violations had occurred within overlapping time frames. (Pls. Settlement Approval Mot.,

at 21). Further, the Settlement Agreement submitted for this Court's review resolves all three

actions on a common basis, thus streamlining and economizing the proceedings by both allowing

a single judgment to resolve all three cases and facilitating the administration and distribution of

the settlement fund to the Plaintiffs. Therefore, the Court consolidates the three matters and

designates Civil Action No. 08-1798 as the "Lead Case," ordering the administrative termination

of Civil Action Nos. 10-2461 and 09-6128.

### C. Motion for Approval of Attorneys' Fees and Reimbursement of Expenses

Plaintiffs' counsel are entitled to reasonable attorneys' fees to compensate them for their

work in recovering unpaid wages on behalf of a class under the FLSA. 29 U.S.C. § 216(b). To

determine the reasonableness of an attorneys' fee award in a FLSA collective action, judicial

review is required "to assure both that counsel is compensated adequately and that no conflict of

interest taints the amount the wronged employee recovers under a settlement agreement." Silva,

17

307 Fed. App'x at 351; see also Maddrix v. Dize, 153 F.2d 274, 275-76 (4th Cir. 1946).  As stated

infra, the percentage-of-recovery method has been accepted as an established approach to

evaluating the award of attorneys' fees in the Third Circuit, and in fact it is "generally favored in

common fund cases because it allows courts to award fees from the fund 'in the manner that

rewards counsel for success and penalizes for failure.'"  In re Rite Aid, 396 F.3d at 300 (citation

omitted).  Further, district courts in this Circuit have favored the percentage-of-recovery method

in wage-and-hour cases such as this where a common fund is established.  See, e.g. Bredbenner,

2011 U.S. Dist. LEXIS 38663, * 19; Chemi v. Champion Mortg., 2009 U.S. Dist. LEXIS 44860,

* 8 (D.N.J. May 26, 2009).  For the reasons listed below, the Court finds the attorneys' fees

requested–one-third of the common fund amount–reasonable under the percentage-of-recovery

method based on the factors established in Guntner and Prudential.

     1.  Size of the Fund Created and Number of Beneficiaries

     The size of the common fund is $3.9 million, providing an average recovery of $34,821

for the 112 class members that it benefits.  (Pls. Attorneys' Fees Mot., at 12).  Compared to other

common funds that have resulted from settlements in wage-and-hour cases, the one established

here is significant.  See, e.g., Bredbenner, 2011 U.S. Dist. LEXIS 38663 (common fund of $3

million for over 1,000 class members); Chemi, 2009 U.S. Dist. LEXIS 44860 (common fund of

$1.2 million for 917 class members found significant); In re Janney Montgomery Scott LLC Fin.

Consultant Litig., 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009)(common fund of $2.88

million for 1,310 class members found significant).

     2.  Presence of Objections by Class Members to the Settlement Terms and Counsel Fees

     The Court first notes that each of the Plaintiffs, included the Named Plaintiffs, agreed to a

common fee arrangement at the outset of the litigation in signing a consent to sue or retainer providing that:

> By signing and returning this consent to sue, I understand that, if accepted for representation, I will be represented by the above Counsel without prepayment of costs or attorneys' fees. I understand that if plaintiff is successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment amount on a pro rata basis with all other plaintiffs. I understand Counsel may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by Counsel will be either the amount received from the defendant or 1/3 of my gross settlement or judgment amount, whichever is greater.

(Pls. Attorneys' Fees Mot., at 4; Dunn Decl., ¶¶ 48-49). Such common fee arrangements agreed to by plaintiffs have been found to be presumptively reasonable under Third Circuit law. See In re Cendant, 264 F.3d at 281-82 (finding presumptively reasonable such fee arrangements entered into through retainer agreements under the Private Securities Litigation Reform Act).

Plaintiffs' counsel has represented that all of the Plaintiffs have spoken with all of the Named Plaintiffs and several other Plaintiffs about the settlement, including the attorneys' fee request, and they unanimously support both without voicing any objections. (Pls. Attorneys' Fees Mot., at 14). The absence of objections indicates that the settlement terms and the attorneys' fees are reasonable. In re Rite Aid, 396 F.3d at 305. Therefore, based on the Plaintiffs' prior consent to the allocation of one-third of the settlement fund for attorneys' fees as well as the absence of any objections by Plaintiffs, the Court finds that this factor favors the reasonableness of the fee award.

### 3.  Skill and Efficiency of Attorneys Involved

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which

counsel prosecuted the case and the performance and quality of opposing counsel." Chemi, 2009 U.S. Dist. LEXIS 44860, * 11 (internal quotations omitted).  Both this Court and other district courts around the country have recognized Plaintiffs' counsel's experience and skill in prosecuting wage-and-hour class litigation.  See, e.g., Bredbenner, 2011 U.S. Dist. LEXIS 38663, at * 7 and * 20; Morangelli v. Chemed Corp., 275 F.R.D. 99, 119 (E.D.N.Y. 2011); Clark, 2010 U.S. Dist. LEXIS 47036, * 26; Martinez-Hernandez v. Butterball, LLC, 2008 U.S. Dist. LEXIS 111931, * 13 (E.D.N.C. Nov. 14, 2008).

Counsel's skill in these matters has been demonstrated by the substantial cash settlement for the 112 Plaintiffs, their involvement in extensive discovery, motion practice, a favorable rulings in summary judgment motions, the wide-ranging experience counsel has accrued in complex FLSA litigation and wage-and-hour actions over time, and counsel's participation in wage-and-hour briefing and lecturing around the country.  (Pls. Attorneys' Fees Mot., at 15-16; Decl. of Michael J.D. Sweeney ("Sweeney Decl."), ¶ 5).  The Court thus finds that this factor weighs in favor of the reasonableness of Plaintiffs' counsel's fee request.

4.  Complexity and Duration of the Litigation

FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts.  See, e.g. Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 743 (1981); Lenahan v. Sears, Roebuck, and Co., 2006 U.S. Dist. LEXIS 60307, * 61-62 (D.N.J. July 24, 2006).  The Court finds the above-captioned matters and the settlement negotiations to resolve them to have contained complex factual and legal issues relating to overtime, retaliation and improper class communications claims.  The negotiations occurred over a span of over three years, with multiple meetings, the enlisting of a professional

20

mediator experienced in wage-and-hour litigation, analysis of wage-and-hour records for more

than 112 plaintiffs, the formulation of damage models, and the negotiation of recoveries. The

Court thus concurs with Plaintiffs' counsel that this factor weighs in favor of approving their fee

request as reasonable.

### 5.  Risk of Nonpayment

The Court also finds that Plaintiffs' counsel risked non-payment during the period of their

representation since they represented Plaintiffs entirely on a contingent basis, with no retainer

fees or expenses paid at the beginning of the litigation. (Pls. Attorneys' Fees Mot., at 17).

Counsel took on the costs of litigation despite their lack of certainty that the Court would find

that Defendants violated the FLSA, constant negotiations with Defendants regarding the

Plaintiffs' recovery based on the number of hours worked, the potential for decertification of the

class once conditionally certified, and risks in changes in the law and appeals. (Denn Decl., ¶¶

14-18).  Given these considerations, the Court finds that the risk of non-payment weighs in favor

of the requested fee.  See, e.g., Lenahan, 2006  U.S. Dist. LEXIS 60307, * 63-64; Serio v.

Wachovia Sec. LLC, 2009 U.S. Dist. LEXIS 27992, * 33 (D.N.J. Mar. 31, 2009).

### 6.  Amount of Time Devoted to the Case by Plaintiffs' Counsel

Plaintiffs' counsel spent over 5,200 hours over the course of the four years of litigation in

litigating and attempting to settle the above-captioned matters. (Pls. Attorneys' Fees Mot., at

18).  This work included: investigation and prosecution of the claims, taking and defending

depositions, interviewing putative class members and opt-in Plaintiffs, obtaining declarations

from putative class members, reviewing documents produced by Camin Cargo in discovery,

reviewing and analyzing time and payroll data, drafting and filing three motions for conditional

certification pursuant to 29 U.S.C. § 216(b), drafting and responding to summary judgment motions, advocating for Plaintiffs who alleged retaliation, engaging in discovery motion practice, and engaging in extensive settlement negotiations. (Id., at 18-19). Plaintiffs' counsel will also engage in administering the settlement if and when it is approved by this Court, including addressing distribution issues and answering Plaintiffs' questions. The Court therefore finds that Plaintiffs' counsel devoted a significant amount of time in vindicating Plaintiffs' rights under the FLSA, and this factor weighs in favor of granting counsel's attorneys' fees request.

### 7. Awards in Similar Cases and Percentage Fee Likely Negotiated if Case Subject to Private Contingent Fee

The Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund when the percentage-of-recovery method is utilized to assess the reasonableness of requested attorneys' fees. See In re Gen. Motors, 55 F.3d at 822. Counsel's request for one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases. See, e.g., Bredbenner, 2011 U.S. Dist. LEXIS 38663, * 52 (approving an award of 32.6% of the settlement fund); Gilliam v. Addicts Rehab. Ctr. Fund, 2008 U.S. Dist. LEXIS 23016, * 8 (S.D.N.Y. Mar. 24, 2008)(approving an award of one-third of the settlement fund); deMunecas v. Bold Food, LLC, 2010 U.S. Dist. LEXIS 87644, * 24 (S.D.N.Y. Aug. 23, 2010)(same); Rotuna v. West Customer Mgmt. Grp., LLC, 2010 U.S. Dist. LEXIS 58912, * 19 (N.D. Ohio Mar. 8, 2010). The attorneys' fees request of one-third of the settlement fund also comports with privately negotiated contingent fees negotiated on the open market. See Bredbenner, 2011 U.S. Dist. LEXIS 38663, * 60. Further, a lodestar cross-check supports counsels' fee request since counsel worked 5,200 hours, at an average rate of $263/hour, resulting in a lodestar of $1,368,195. This rate exceeds the $1.3 million request of counsel, and

it does not include the expenses counsel will incur following the final approval of the settlement to administer said settlement. (Pls. Attorneys' Fees Mot., at 22-24). The Court thus finds that this factor weighs in favor of finding said request reasonable.

    8.  Value of Benefits Attributable to Efforts of Class Counsel and Innovative Terms of Settlement

Counsel did not rely in seeking recovery for Plaintiffs on ongoing governmental investigations into Defendants, but rather utilized their own resources to litigate the above-captioned matters. While their settlement does not appear to contain innovative terms, the Court finds that, overall, the fee requested is reasonable in light of the above-considered factors.

### IV.  CONCLUSION

For the reasons set forth above, the Court: (1) grants in part and denies in part Plaintiffs' Motion to Approve the FLSA Collective Action Settlement; (2) grants the Plaintiffs' Motion to Consolidate the Actions for Settlement Purposes; and (3) grants Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Expenses. An appropriate Order accompanies this Opinion.


DATED: March 26, 2012

                                                 Jose L. Linares
                                                 United States District Judge